IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | | |
|---|---|---|
| LAKENDUS COLE and LEON EDMOND, individually and as representatives of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 2:13-cv-02117-JPM-dkv |
| v. | ) ) | |
| CITY OF MEMPHIS, TENNESSEE, | ) ) | |
| Defendant. | ) ) | |

---

**ORDER DENYING IN PART AND GRANTING IN PART MOTION OF THE CITY OF MEMPHIS TO DECERTIFY OR MODIFY CLASS**

---

Before the Court is the Motion of the City of Memphis to Decertify or Modify Class, filed February 13, 2015. (ECF No. 148.) Plaintiffs filed a Response on February 20, 2015. (ECF No. 154.) For the reasons set forth below, the Motion is DENIED in part and GRANTED in part.

I. BACKGROUND

A detailed factual and procedural summary of the case is included in the Court's Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification. Cole v. City of Memphis, Tenn., No. 2:13-cv-02117-JPM-dkv, 2014 WL 8508560 (W.D. Tenn. Sept. 29, 2014); (ECF No. 88). Subsequent to issuance of the Court's Order, which granted certification of

Plaintiffs' putative class under Rule 23(b)(2) of the Federal Rules of Civil Procedure, the Court held a jury trial on the merits of Plaintiffs' case. (See ECF Nos. 125-28.) The merits of the case included determinations of the individual plaintiffs' claims for money damages and factual determinations regarding the declaratory and injunctive relief sought on behalf of the class as a whole. (See Verdict, ECF No. 141.)

At the end of trial, the jury found that the City of Memphis had "through its police officers, carried out a custom and/or well-established practice mainly on weekends at or about 3:00 a.m. of preventing persons from standing and/or walking on the sidewalk or street of Beale Street prior to [and on or after] June 14, 2012." (Verdict ¶¶ 1-2, ECF No. 141.) The jury found that this practice "occurs without consideration to whether conditions throughout the Beale Street area pose an existing, imminent or immediate threat to public safety." (Id. ¶ 4.) The jury further found that the above-described practice was "the cause of persons being prevented from standing and/or walking on the sidewalk or street of Beale Street." (Id. ¶ 3.) The jury also found that "since at least 2007, thousands of persons were cleared off of Beale Street pursuant to" that practice. (Id. ¶ 5.)

With regard to Plaintiff Cole's individual claim for damages, the jury found that Cole had been removed from Beale

Street in the manner described above; that "conditions throughout the Beale Street area did NOT pose an existing, imminent or immediate threat to public safety at the time the police officers initiated" the sweep on the night Cole was removed and arrested; that Cole was arrested without probable cause in violation of the Fourth Amendment; that the Memphis Police Department used excessive force during Cole's arrest in violation of the Fourth Amendment; and that the cause of Cole's damages was the above-described practice. (Id. ¶¶ 7-16.) The jury awarded Cole $35,000 in damages. (Id. ¶ 17.)

With regard to Plaintiff Edmond's individual claim for damages, the jury found that Edmond had not been removed from Beale Street pursuant to the custom described above and Edmond's arrest was not unlawful.[1] (Id. ¶¶ 18, 21.) Accordingly, the jury did not award any damages to Edmond. (Id. ¶ 30.)

Post-trial, Defendant filed the instant Motion of the City of Memphis to Decertify or Modify Class on February 13, 2015. (ECF No. 148.) Plaintiffs responded in opposition to Defendant's Motion on February 20, 2015. (ECF No. 154.) In the Motion to Decertify or Modify Class, Defendant raises the narrow issue of whether Plaintiffs' class should be decertified on the

---

[1] Although the jury was not required to answer question 19 on the Jury Verdict Form, the jury found that "the conditions throughout the Beale Street area did NOT pose an existing, imminent or immediate threat to public safety at the time the police officers initiated the custom and/or well-established practice described in Question 1 on May 5, 2012." (Verdict ¶ 19.)

3

basis that "class membership is unascertainable without a full adjudication on the merits of each potential member's claim." (ECF No. 148-1 at 1.)

**II. STANDARD OF REVIEW**

"A district court has broad discretion to decide whether to certify [or decertify] a class." See In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig., 722 F.3d 838, 850 (6th Cir. 2013) (citing In re Am. Med. Sys., Inc., 75 F.3d 1069, 1079 (6th Cir. 1996)), cert. denied, 134 S. Ct. 1277 (2014). The United States Court of Appeals for the Sixth Circuit has recognized that the "class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." In re Whirlpool, 722 F.3d at 850 (quoting Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550 (2011)) (internal quotation marks omitted).

"An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). A class action may be maintained under Rule 23(b)(2) only if Plaintiffs have made a sufficient showing that

> the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . .

"The key to the [Rule 23](b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted — the notion

that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." Dukes, 131 S. Ct. 2541, 2557 (citation and internal quotation marks omitted). "When a class seeks an indivisible injunction benefitting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute. Predominance and superiority are self-evident." Id. at 2558.

Furthermore, "[t]he nature of the primary relief sought in [23(b)(2) class actions], injunctive or declaratory relief, does not require that the class be as narrowly confined as under either (b)(1) or (b) (3)." Weathers v. Peters Realty Corp., 499 F.2d 1197, 1200 (6th Cir. 1974). "What matters to class certification . . . [is] the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." Dukes, 131 S.Ct. at 2551 (internal quotation marks omitted) (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 48 N.Y.U. L. Rev. 97, 132 (2009)). A class may be certified under 23(b)(2) where "the common claim is susceptible to a single proof and subject to a single injunctive remedy." Senter v. General Motors Corp., 532 F.2d 511, 525 (6th Cir. 1976). Further, where individual class members each have claims for money damages, certifying a 23(b)(2) class is

appropriate if the request for monetary damages is kept separate from the class action claims for declaratory relief.  Gooch, 672 F.3d at 427-428.

**III. ANALYSIS**

Defendant argues that Plaintiffs' class as defined is not "'administratively feasible for the court to determine whether a particular person is a member of the class.'"  (ECF No. 148-1 at 4 (quoting Young v. Nationwide Mut. Ins. Co., 693 F.3d 532, 537-38 (6th Cir 2012)).)  Defendant asserts that a common claim susceptible to a single proof and subject to a single injunctive remedy does not exist in the instant case as evidenced by the fact that one of the class's representative plaintiffs, Leon Edmonds, "was unable to prove himself a member of the class . . . ."  (Id.)  Defendant contends that "[t]he class 'must not require a merits based adjudication to determine inclusion.'" (Id. at 5 (citing Schilling v Kenton Cnty., Ky., No. CIV.A. 10-143-DLB, 2011 WL 293759, at *7 (E.D. Ky. Jan. 27, 2011)).)

Defendant also argues that with regard to "§ 1983 cases, a class definition is too general where it requires the Court to determine whether an individual's constitutional rights have been violated in order to ascertain membership in the class itself." (Id.)  Defendant avers that "to define a class as all citizens who have had their constitutional rights

violated essentially makes every person on earth a potential class member until a judgment is reached on the merits of that person's individual claim." (Id.) Finally, Defendant voices its concern that "[a] prospective class member who simply claims to have been ordered off the street on a given night will require an extensive merits-based adjudication to determine inclusion." (Id.)

Plaintiffs first argue that Defendant's Motion to Decertify or Modify Class should be denied out of hand because "it seeks only to reargue issues that were thoroughly briefed by the parties, and considered by the Court, at the time of the certification of the class, and no change in circumstances or applicable law has occurred." (ECF No. 154 at 1-2.)

Plaintiffs next argue that "certification of a class pursuant to FRCP Rule 23(b)(2) for injunctive and declaratory relief does not require class members to be ascertainable or a merit-based inquir[y] into individual class members['] entitlement to relief." (Id. at 2-3.) Plaintiffs assert that although "[t]he Sixth Circuit has not specifically addressed whether ascertainability is an essential requirement in a Rule 23(b)(2) class, []other Circuits have ruled that it is not." (ECF No. 154 at 4.) Plaintiffs cite to favorable rulings from the First, Third, Fifth, Tenth Circuits and the District Court for the Northern District of New York. (Id. at 4-6 (citing

Yaffe v. Powers, 454 F.2d 1362, 1366 (1st Cir. 1972); Shelton v. Bledsoe, 775 F.3d 554, 560-62 (3d Cir. 2015); In re Monumental Life Ins. Co., 365 F.3d 408, 413 (5th Cir. 2004); Shook v. El Paso County, 386 F.3d 963 (10th Cir. 2004); Anderson v. Coughlin, 119 F.R.D. 1 (N.D.N.Y. 1988)).) In further support of the argument that the ascertainability of class members does not factor into certification, Plaintiffs point to the Supreme Court's analysis in Dukes as a model for certifying a Rule 23(b)(2) class. Plaintiffs assert that the Supreme Court's analysis "lacks any inquiry into 'ascertainability' of class members." (ECF No. 154 at 3.) Plaintiffs also contend that the case law cited by Defendant is inapposite in this case. (See id. at 7-9.)

Finally, Plaintiffs argue that "the primary merit-based inquiry relevant to the class — whether thousands of individuals were cleared off of Beale Street in the absence of existing, imminent or immediate threats to public safety — is objective and capable of being determined by the jury by inquiries common to all class member[s] . . . ." (Id. at 3.) This question, according to Plaintiffs, was resolved by the jury's findings. (Id.)

With regard to whether the circumstances warrant the Court's consideration of Defendant's request to decertify the class, the Court is satisfied that the jury's finding that

8

Plaintiff Edmond did not suffer an injury as a result of an unconstitutional custom is a sufficient basis for the Court's consideration of Defendant's Motion.

With regard to whether certification of a 23(b)(2) class for injunctive and declaratory relief requires a showing that class members are ascertainable, the Court agrees with Plaintiffs. As noted previously, Rule 23(b)(2) classes are not subject to the same restrictions as other class types because damages are determined on an individual basis separate from the class' claims. See Weathers, 499 F.2d at 1200. The Court of Appeals' analysis in Yaffe is instructive on why the ascertainability inquiry is not applicable in the context of class actions for civil rights violations under Rule 23(b)(2):

> In holding that a class should not be certified because its members had not been sufficiently identified, for example, the court applied standards applicable to a subdivision (b)(3) class rather than to a subdivision (b)(2) class. Although notice to and therefore precise definition of the members of the suggested class are important to certification of a subdivision (b)(3) class, notice to the members of a (b)(2) class is not required and the actual membership of the class need not therefore be precisely delimited. In fact, the conduct complained of is the benchmark for determining whether a subdivision (b)(2) class exists, making it uniquely suited to civil rights actions in which the members of the class are often incapable of specific enumeration.

454 F.2d at 1366 (emphasis added) (internal quotation marks omitted). Accordingly, the Court finds that Plaintiffs are not required to show that the class members are ascertainable in

order to maintain their class under Rule 23(b)(2).

In adopting the First Circuit's approach in Yaffe, the Court looks to the specific conduct of Defendant and whether "the common claim is susceptible to a single proof and subject to a single injunctive remedy." See Senter v. General Motors Corp., 532 F.2d 511, 525 (6th Cir. 1976). In the Court's Order granting class certification under Rule 23(b)(2), the Court anticipated that questions common to the class would be resolved by adjudication of the instant case. (See ECF No. 88 at 36-38.) The jury's verdict and the factual findings therein confirm the Court's expectation of the resolution of common questions. In this case, the jury found that "the City of Memphis, through its police officers, carried out a custom and/or well-established practice mainly on weekends at or about 3:00 a.m. of preventing persons from standing and/or walking on the sidewalk or street of Beale Street [before and after] June 14, 2012." (Verdict ¶¶ 1-2.) Additionally, the jury found that this practice "occurs without consideration to whether conditions throughout the Beale Street area pose an existing, imminent or immediate threat to public safety." (Id. ¶ 4.) These findings answer in the affirmative the common question that all class members would otherwise have to prove at trial — whether the MPD routinely conducted an unconstitutional practice of clearing Beale Street.

Additionally, the jury's finding that the Beale Street

Sweep continued past June 12, 2012 indicates that the Beale Street Sweep custom may continue to exist today.  Consequently, the relief sought — an injunction against the further execution of the Beale Street Sweep — provides a single remedy to protect all class members from future harm.  Furthermore, the jury found that "since at least 2007, thousands of persons were cleared off of Beale Street pursuant to" the Beale Street Sweep.  (Verdict ¶ 5.)  This finding supports the establishment of a class action due to the far-reaching effect that the Beale Street Sweep has had on a substantial number of individuals.

Finally, even if ascertainability of class members is required for Rule 23(b)(2) classes, Plaintiffs' class is objectively defined with narrow limitations.  See Young, 693 F.3d at 538-39 (holding that "[f]or a [Rule 23(b)(3)] class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria.  In some circumstances, a reference to damages or injuries caused by particular wrongful actions taken by the defendants will be sufficiently objective criterion for proper inclusion in a class definition.  Similarly, a reference to fixed, geographic boundaries will generally be sufficiently objective for proper inclusion in a class definition.")  Plaintiff's class is limited to the geographic area of the Beale Street Entertainment

District.  It is limited to individuals who suffered injury by police in the early morning hours at approximately 3 a.m.  The class is also limited by the manner in which class members were removed from Beale Street — by order of the MPD to immediately leave the sidewalks and street on Beale Street without consideration to whether conditions throughout the Beale Street area pose an existing, imminent or immediate threat to public safety.  Defendant's characterization that the class as defined would "essentially make[] every person on earth a potential class member until a judgment is reached on the merits" is inaccurate.  (See ECF No. 148-1 at 5.)  Instead, it is Defendant's position that overreaches.  Taking Defendant's position to its logical conclusion would result in the disqualification of most, if not all, class actions seeking injunctive or declaratory relief for civil rights violations.

For these reasons, the Court finds that decertification is inappropriate in the instant case.

The Court must also consider whether to modify Plaintiffs' class definition.  The Court previously certified Plaintiffs' class, defined as "[a]ll persons who have been unlawfully removed from Beale Street and/or adjacent sidewalks by City of Memphis police officers pursuant to the custom, policy and practice known as the Beale Street Sweep."  (ECF No. 88.) Latent in this class definition is the definition of the term

12

"the Beale Street Sweep." Plaintiffs previously defined the Beale Street Sweep as "the policy, procedure, custom, or practice by which police officers of the Memphis Police Department ("MPD") order all persons to immediately leave the sidewalks and street on Beale Street when there are no circumstances present which threaten the safety of the public or MPD police officers." (Id. at 2.)

The Court finds that Plaintiffs' previous definition of the Beale Street Sweep requires modification in order to be more consistent with the strict scrutiny standard that is applied to cases regarding violations of an individual's fundamental rights, such as the fundamental right to intrastate travel. (See ECF No. 121 at 24-31.) Specifically, the class must be limited to those individuals who are injured as a result of government action that was not "narrowly tailored to a compelling government interest." See Does v. Munoz, 507 F.3d 961, 964 (6th Cir. 2007). For the purposes of Plaintiffs' class, the issue is whether the custom employed by the Memphis Police Department was the least restrictive means to achieve public safety. (See ECF No. 121 at 29-30.) The following definition accurately delineates the boundary between the unconstitutional Beale Street Sweep custom and the constitutionally authorized use of force by the Memphis Police Department to ensure public safety. Accordingly, the Court

defines "the Beale Street Sweep" as "the policy, procedure, custom, or practice by which police officers of the Memphis Police Department order all persons to immediately leave the sidewalks and street on Beale Street without consideration of whether conditions throughout the Beale Street area pose an existing, imminent or immediate threat to public safety."

## IV. CONCLUSION

For the preceding reasons, the Motion of the City of Memphis to Decertify or Modify Class is DENIED as to Defendant's request for decertification and GRANTED as to Defendant's general request for modification. The Court's definition of "the Beale Street Sweep" shall hereinafter be incorporated in the definition of Plaintiffs' class.

**IT IS SO ORDERED,** this 28th day of May, 2015.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE

14