IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

LAKENDUS COLE and LEON EDMOND, )
individually and as )
representatives of all others )
similarly situated, )
)
    Plaintiffs, )
                     No. 2:13-cv-02117-JPM-dkv
v. )
)
CITY OF MEMPHIS, TENNESSEE, )
)
    Defendant. )
)

---

**ORDER GRANTING DECLARATORY AND INJUNCTIVE RELIEF**

---

        Plaintiffs, on behalf of the Class, have requested declaratory and injunctive relief in the instant case. For the reasons that follow, the Court finds that declaratory and injunctive relief will clarify and settle important legal relations in the Memphis Beale Street Entertainment District and afford relief from uncertainty and controversy regarding policing policies in connection with Beale Street. Based on the extensive record developed and the evidence submitted in the jury trial in the case, the Court also determines that the City of Memphis' practice of ordering all persons to immediately leave the sidewalks and street on Beale Street **without consideration to whether conditions throughout the Beale Street area pose an existing, imminent or immediate threat to public**

**safety** is unconstitutional. While the City of Memphis asserts that it has now abandoned the unconstitutional practice, evidence to the contrary, including the jury's factual findings, has been received by the Court. Accordingly, the Court finds that the weight of the evidence compels issuance of narrowly tailored injunctive and other equitable relief in order to remedy the City's constitutional violations.

**I.    BACKGROUND**

**A.    Factual Background**

Plaintiff Lakendus Cole is a police officer employed with the City of Memphis Police Department Organized Crime Unit, and Plaintiff Leon Edmond is a Special Agent employed with the Bureau of Alcohol, Tobacco, Firearms and Explosives. (Compl. at 1-2, ECF No. 1.)

Plaintiffs assert a class action claim against Defendant City of Memphis ("the City") for

> the policy, procedure, custom, or practice by which police officers of the Memphis Police Department ("MPD") order all persons to immediately leave the sidewalks and street on Beale Street when there are no circumstances present which threaten the safety of the public or MPD police officers ("the Beale Street [] Sweep").

(Id. at 2.) According to Plaintiffs, "[t]he Beale Street [] Sweep routinely occurs in the early morning hours on Saturdays and Sundays and during certain scheduled entertainment events on weekdays." (Id.) Plaintiffs assert that the Beale Street Sweep

2

"incites violence amongst its employee police officers and creates an environment where they become aggressive, agitated, frenetic, and confrontational with persons lawfully standing on a sidewalk or upon Beale Street." (Id.)

Under 42 U.S.C. § 1983, Plaintiffs Cole and Edmond also assert individual claims against the City of Memphis. With regard to Plaintiff Cole, Plaintiffs assert the following: "Plaintiff Cole, while off-duty and dressed in civilian clothing, was outside of Club 152 on Beale Street. . . ." (Id. ¶ 30.) "Plaintiff Cole was not intoxicated and had not consumed an alcoholic beverage." (Id. ¶ 31.) "Pursuant to the Beale Street Sweep, prior to Plaintiff exiting Club 152, MPD police officers including the Individual Defendants ordered all individuals to immediately leave the sidewalks and street in the Beale Street Entertainment District." (Id. ¶ 32.) "The Individual Defendants suddenly grabbed Plaintiff Cole and[,] without reasonable cause to do so[,] began to assault and viciously attack him." (Id. ¶ 35.) "The Individual Defendants slammed Plaintiff Cole's body into the police vehicle twice with such force that the impact dented the body of the police vehicle." (Id. ¶ 36.) The Individual Defendants handcuffed Plaintiff Cole, placed him in the back of the police vehicle, and transported Plaintiff Cole to the Shelby County Jail. (Id. ¶¶ 37-38.) All criminal charges were later dismissed. (Id.

¶ 41.)

With regard to Plaintiff Edmond, Plaintiffs allege:
"Plaintiff Edmond, while off-duty and dressed in civilian
clothing and visiting Memphis[,] was walking in the Beale Street
Entertainment District enjoying the sights and music." (Id.
¶ 46.) "Plaintiff Edmond was not intoxicated." (Id. ¶ 47.) As
Plaintiff Edmond attempted to enter Club 152 on Beale Street,
"Plaintiff Edmond and other family members were approached by
Defendant Cooper who ordered Plaintiff Edmond and his family
member [sic] to stop walking and demanded that they speak to her
regarding their attempt to enter Club 152." (Id. ¶ 51.)
"Defendant Cooper and Defendant Skelton placed Plaintiff Edmond
under arrest for public intoxication." (Id. ¶ 54.) After
advising Defendant Cooper and Defendant Skelton that Plaintiff
Edmond was a special agent with the Bureau of Alcohol, Tobacco,
Firearms and Explosives ("ATF"), MPD police officers contacted
Plaintiff Edmond's supervisor, who contacted another ATF special
agent Marcus Watson in charge of the Memphis Field Office. (Id.
¶¶ 55-57.) After Watson arrived on the scene, Plaintiff Edmond
was released from police custody. (Id. ¶ 58.)

Defendant City of Memphis claims that the practice of
"advis[ing] patrons standing on Beale Street at 2:30am to make
their way into a club or make preparations to leave Beale
Street" and, after 3:00 a.m., "uniformly ordering patrons off of

4

Beale Street, with the option of entering a club" has been "abandoned by order of MPD command staff." (Def. City's Resp. to Pl.'s Mot. ¶¶ 1-2, ECF No. 40.) The City contends that the practice was terminated on June 14, 2012. (ECF No. 40-1 at 2.) The City further asserts that Plaintiffs' interactions with police as described in their Complaint were in response to reports of Plaintiffs' illegal conduct. (ECF No. 40 ¶¶ 3-6.)

The City alleges that on August 26, 2012, MPD officers responded to a disorderly conduct call near 152 Beale Street, where "Officers instructed Plaintiff Cole to go inside the club [Club 152] or leave the street. Plaintiff Cole refused to comply and acted disrespectfully towards the officers." (Id. ¶¶ 3-4 (alteration in original).)

The City asserts that on May 5, 2012, "MPD officers responded to a disturbance call at the entrance to 152 Beale." (Id. ¶ 5.) "At that time officers came upon a visibly intoxicated Plaintiff Edmonds in an altercation with the doorman and bouncers at 152 Beale. MPD officers removed Plaintiff from the area and discovered that he was presently armed with a GLOCK Model 27 .40 caliber pistol." (Id. ¶ 6.)

B.  **The Trial**

This case was tried by a jury beginning on January 20, 2015. (ECF No. 125.) The jury returned their verdict on January 27, 2015. (ECF No. 138.) In the verdict, the jury made

four findings relevant to class relief: (1) that the City of Memphis had "through its police officers, carried out a custom and/or well-established practice mainly on weekends at or about 3:00 a.m. of preventing persons from standing and/or walking on the sidewalk or street of Beale Street prior to [and on or after] June 14, 2012" (Verdict ¶¶ 1-2, ECF No. 141); (2) that this well-established practice "occurs without consideration to whether conditions throughout the Beale Street area pose an existing, imminent or immediate threat to public safety" (id. ¶ 4); (3) that the well-established practice was "the cause of persons being prevented from standing and/or walking on the sidewalk or street of Beale Street" (id. ¶ 3); and (4) that "since at least 2007, thousands of persons were cleared off of Beale Street pursuant to" that practice. (Id. ¶ 5.)

With regard to Plaintiff Cole's individual claim for damages, the jury made five findings: (1) that Cole had been removed from Beale Street in the manner described above; (2) that "conditions throughout the Beale Street area did NOT pose an existing, imminent or immediate threat to public safety at the time the police officers initiated" the sweep on the night Cole was removed and arrested; (3) that Cole was arrested without probable cause in violation of the Fourth Amendment; (4) that the Memphis Police Department used excessive force during Cole's arrest in violation of the Fourth Amendment; and

(5) that the well-established practice caused the violations of
Cole's Fourth Amendment rights and damages to Cole. (<u>Id.</u> ¶¶ 7-
16.)  The jury awarded Cole $35,000 in damages. (<u>Id.</u> ¶ 17.)

With regard to Plaintiff Edmond's individual claim for
damages, the jury found that Edmond had not been removed from
Beale Street pursuant to the well-established practice described
above and Edmond's arrest was not unlawful.[1] (<u>Id.</u> ¶¶ 18, 21.)
Accordingly, the jury did not award any damages to Edmond. (<u>Id.</u>
¶ 30.)

### C.  Procedural History

On February 25, 2013, Lakendus Cole and Leon Edmond
(collectively, "Plaintiffs") filed a Class Action Complaint
asserting deprivation of constitutional rights and seeking
injunctive relief and monetary damages. (Compl. ECF No. 1.)  On
April 4, 2013, Defendant Cari Cooper filed an Answer. (ECF
No. 6.)  On April 11, 2013, Defendant City of Memphis filed an
Answer. (ECF No. 8.)  On June 14, 2013, Defendant Robert
Skelton filed an Answer. (ECF No. 25.)  On June 18, 2013,
Defendants Christopher Bing, John Faircloth, Robert Forbert, and
Samuel Hearn filed an Answer. (ECF No. 27.)

On April 2, 2013, Defendants Robert Forbert and John

---

[1] Although the jury was not required to answer question 19 on the Jury
Verdict Form, the jury found that "the conditions throughout the Beale
Street area did NOT pose an existing, imminent or immediate threat to
public safety at the time the police officers initiated the custom
and/or well-established practice described in Question 1 on May 5,
2012." (Verdict ¶ 19.)

Faircloth filed a Motion to Dismiss for Failure to State a
Claim. (ECF No. 5.) On April 10, 2013, Plaintiffs filed a
Response in opposition to the Motion to Dismiss. (ECF No. 7.)
On June 4, 2013, the Court entered an Order granting in part and
denying in part the Motion to Dismiss. (ECF No. 22.) The Court
found that Plaintiffs have stated a claim pursuant to Rule 8(a)
of the Federal Rules of Civil Procedure but dismissed
Plaintiffs' substantive due-process claim under the Fourteenth
Amendment as to Defendants Robert Forbert and John Faircloth.
(ECF No. 22.)

On May 16, 2013, Defendant Christopher Bing filed a Motion
to Dismiss for Failure to State a Claim. (ECF No. 12.) On
May 28, 2013, Plaintiffs filed a Response in opposition to the
Motion to Dismiss. (ECF No. 13.) On June 6, 2013, the Court
entered an Order granting in part the Motion to Dismiss as to
Plaintiffs' substantive due-process claim under the Fourteenth
Amendment but denying in part the Motion as to all other claims
against Bing. (ECF No. 23.)

On May 31, 2013, Defendant Samuel Hearn filed a Motion to
Dismiss for Failure to State a Claim. (ECF No. 21.) No
Response was filed within the required time. On July 10, 2013,
the Court entered an Order granting in part the Motion to
Dismiss as to Plaintiffs' substantive due-process claim under
the Fourteenth Amendment but denying in part the Motion as to

all other claims against Hearn.  (ECF No. 29.)

On November 27, 2013, Plaintiffs filed the Motion to Certify Class.  (ECF No. 36.)  Defendant City of Memphis filed a Response on December 18, 2013.  (ECF No. 40.)  On January 9, 2014, the Court held a hearing on the Motion.  (ECF No. 42.) Plaintiffs filed a Supplemental Memorandum of Law in support of its Motion for Class Certification on June 30, 2014.  (ECF No. 85.)  Defendant filed its Response to the Supplemental Memorandum on July 7, 2014 (ECF No. 86), and Plaintiffs filed their Reply on July 14, 2014 (ECF No. 87).  On September 29, 2014, the Court granted in part and denied in part Plaintiffs' Motion to Certify Class ("Order Certifying Class").  (ECF No. 88.)  In the Court's Order, the Court certified Plaintiffs' proposed class under Rule 23(b)(2) of the Federal Rules of Civil Procedure for the purposes of injunctive and declaratory relief, and denied certification under Rule 23(b)(3).  (ECF No. 88 at 41.)

On October 23, 2014, Plaintiffs filed a Notice of Dismissal with Prejudice of Plaintiffs' Claims Against the Individual Officers upon Stipulation of the Parties.  (ECF No. 91.)  The Court dismissed Plaintiffs' claims against all individual officers with prejudice in an order entered October 27, 2014. (ECF No. 93.)

On October 27, 2014, the Defendant City of Memphis filed a

Motion for Summary Judgment. (ECF No. 92.) Plaintiffs filed a Response in Opposition on November 24, 2014. (ECF No. 97.) Defendant filed a Reply on December 8, 2014. (ECF No. 101.) The Court entered an Order granting in part and denying in part the Motion for Summary Judgment ("Summary Judgment Order") on January 18, 2015. (ECF No. 121.)

On October 27, 2014, Plaintiffs filed a Motion for Partial Summary Judgment. (ECF No. 94.) Defendant filed a Response in Opposition on November 24, 2014. (ECF No. 95.) The Court denied Plaintiffs' Motion for Partial Summary Judgment on May 28, 2015. (ECF No. 159.)

A jury trial was held from January 20, 2015 to January 27, 2015. (ECF Nos. 125-28, 138.) The jury reached a verdict on January 27, 2015. (ECF Nos. 138, 141.) The jury found in favor of Plaintiff Cole and against Plaintiff Edmond. (ECF No. 141.)

On February 13, 2015, Defendant filed a Motion to Decertify or Modify Class. (ECF No. 148.) Plaintiffs filed a Response in Opposition to Defendant's Motion on February 20, 2015. (ECF No. 154.)

The Court issued a Scheduling Order setting a deadline of February 17, 2015 for additional briefing on remedies. (ECF No. 147.) On February 17, 2015, the parties submitted briefs regarding declaratory, injunctive and other equitable relief. (ECF Nos. 150-51.) The parties filed response briefs on

February 20, 2015.  (ECF Nos. 152-53.)  The Court held a post-verdict hearing on injunctive relief on February 24, 2015.  (ECF No. 157.)  The Court entered an Order denying in part and granting in part the Motion to Decertify or Modify Class on May 28, 2015.  (ECF No. 160.)

## II.  STANDARD OF REVIEW

### A.  Municipal Liability

Unlike state government entities, "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief" for conduct that infringes the constitutional rights of individuals.  Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 (1978).  Municipalities are not subject to respondeat superior liability in cases where liability "does not arise out of the municipality's own wrongful conduct."  Los Angeles Cnty., Cal. v. Humphries, 131 S. Ct. 447, 453 (2010); Monell, 436 U.S. at 691 ("In particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.").  Consequently, to succeed on a claim against the City of Memphis, Plaintiffs "must prove two basic elements: (1) that a constitutional violation occurred; and (2) that the [City] is responsible for that violation."  See Graham ex rel. Estate of Graham v. Cnty. of Washtenaw, 358 F.3d

377, 382 (6th Cir. 2004) (internal quotation marks omitted).

**B.  Declaratory Judgment**

Under the Declaratory Judgment Act, 28 U.S.C. § 2201, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . ."  The statute has repeatedly "been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."  <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 286 (1995).

The Supreme Court, however, has cautioned that "the federal courts . . . do not render advisory opinions.  For adjudication of constitutional issues[,] 'concrete legal issues, presented in actual cases, not abstractions' are requisite."  <u>United Pub. Workers of Am. (C.I.O.) v. Mitchell</u>, 330 U.S. 75, 89 (1947) (quoting <u>United States v. Appalachian Elec. Power Co.</u>, 311 U.S. 377, 423 (1940)).  To that end, the Supreme Court has directed that federal courts

> must be alert to avoid imposition upon their jurisdiction through obtaining futile or premature interventions, especially in the field of public law. A maximum of caution is necessary in the type of litigation that we have here, where a ruling is sought that would reach far beyond the particular case. Such differences of opinion or conflicts of interest must be 'ripe for determination' as controversies over legal rights. The disagreement must not be nebulous or

contingent but must have taken on fixed and final
shape so that a court can see what legal issues it is
deciding, what effect its decision will have on the
adversaries, and some useful purpose to be achieved in
deciding them.

Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc., 344 U.S. 237,

243-44 (1952). "[T]he question in each case is whether the

facts alleged, under all the circumstances, show that there is a

substantial controversy, between parties having adverse legal

interests, of sufficient immediacy and reality to warrant the

issuance of a declaratory judgment." Preiser v. Newkirk, 422

U.S. 395, 402 (1975) (internal emphasis and quotation marks

omitted).

> The two principal criteria guiding the policy in favor
> of rendering declaratory judgments are (1) when the
> judgment will serve a useful purpose in clarifying and
> settling the legal relations in issue, and (2) when it
> will terminate and afford relief from the uncertainty,
> insecurity, and controversy giving rise to the
> proceeding. It follows that when neither of these
> results can be accomplished, the court should decline
> to render the declaration prayed.

Grand Trunk W.R. Co. v. Consol. Rail Corp., 746 F.2d 323, 326

(6th Cir. 1984) (internal quotation marks omitted).

Consequently, the Court considers the following factors in

determining whether to issue declaratory judgment in a case:

> (1) whether the declaratory action would settle the
> controversy; (2) whether the declaratory action would
> serve a useful purpose in clarifying the legal
> relations in issue; (3) whether the declaratory remedy
> is being used merely for the purpose of "procedural
> fencing" or "to provide an arena for a race for res
> judicata;" (4) whether the use of a declaratory action

would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

Id. at 326. "[T]he Grand Trunk factors and their cousins in other circuits direct the district court to consider three things: efficiency, fairness, and federalism." W. World Ins. Co. v. Hoey, 773 F.3d 755, 759 (6th Cir. 2014). The Grand Trunk factors have not been given a set weight and the importance of each factor varies depending on the facts particular to each case. Id.

### C. Permanent Injunction and Equitable Relief

"The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court . . . ." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). Generally, a plaintiff requesting a permanent injunction must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Id. In § 1983 actions, "[a] party is entitled to a permanent injunction if it can establish that it suffered a constitutional violation and will suffer continuing irreparable injury for which there is no adequate remedy at law." Saieg v. City of

<u>Dearborn</u>, 641 F.3d 727, 733 (6th Cir. 2011) (internal quotation marks omitted).

**III. ANALYSIS**

**A.   Municipal Liability**

Before determining whether declaratory, injunctive, and other equitable relief is appropriate in the instant case, the Court must first determine whether Plaintiffs have satisfied the requirements for establishing the availability of municipal liability.  <u>See</u> <u>Los Angeles Cnty., Cal. v. Humphries</u>, 562 U.S. 29, 31 (2010) (concluding that "the 'policy or custom' requirement [] applies when plaintiffs seek prospective relief, such as an injunction or a declaratory judgment").  "A plaintiff asserting a section 1983 claim on the basis of a municipal custom or policy must 'identify the policy, connect the policy to the [municipality] itself and show that the particular injury was incurred because of the execution of that policy.'"  <u>Graham</u>, 358 F.3d at 383 (quoting <u>Garner v. Memphis Police Dep't</u>, 8 F.3d 358, 364 (6th Cir. 1993)).

**1.   Unconstitutional Custom**

A plaintiff bringing a claim under § 1983 against a municipality must prove the existence of an official policy responsible for the constitutional deprivation, or alternatively prove that the constitutional deprivations were caused by a "governmental 'custom' even though such a custom has not

received formal approval through the body's official decisionmaking channels." Monell, 436 U.S. at 691. A custom sufficient to establish municipal liability under § 1983 exists where "practices of [local] officials [are] so permanent and well settled as to constitute a custom or usage with the force of law." Id. (internal citations and quotation marks omitted); Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ., 103 F.3d 495, 507 (6th Cir. 1996). Plaintiffs have identified the Beale Street Sweep as a municipal custom that resulted in the violation of Plaintiffs' Fourth and Fourteenth Amendment rights.

In the Summary Judgment Order, the Court found that the Beale Street Sweep, as alleged, implicates the constitutionally protected fundamental right "'to travel locally through public spaces and roadways.'" Cole v. City of Memphis, --- F. Supp. 3d ---, No. 2:13-cv-02117-JPM-dkv, 2015 WL 1567824, at *10-11 (W.D. Tenn. Jan. 18, 2015) (quoting Johnson v. City of Cincinnati, 310 F.3d 484, 498 (6th Cir. 2002)). The Court also found that "the Beale Street Sweep as alleged was not narrowly tailored and fails a strict scrutiny analysis." Id. at *12. The Court, however, declined to find that municipal liability existed as a matter of law in the instant case due to the existence of several disputed factual issues. See id. The Court explained that due to the divergent descriptions of the

circumstances giving rise to the Beale Street Sweep by the parties, "several genuine issues of material fact remain[ed]" that made granting summary judgment in favor of Plaintiffs on the issue of municipal liability inappropriate.  Id.

The factual issues that existed at the time of the Summary Judgment Order are now resolved by the evidence presented at trial and the jury's factual findings.  The jury, in its verdict, found that "the City of Memphis, through its police officers, carried out a custom and/or well-established practice mainly on weekends at or about 3:00 a.m. of preventing persons from standing and/or walking on the sidewalk or street of Beale Street [before and after] June 14, 2012."  (Verdict ¶¶ 1-2.) The jury found that the well-established practice "occurs without consideration to whether conditions throughout the Beale Street area pose an existing, imminent or immediate threat to public safety[.]"  (Id. ¶ 4.)  With regard to Plaintiff Cole, the jury found that the well-established practice "prevented Plaintiff Cole from standing and/or walking on the sidewalk or street of Beale Street on August 26, 2012."  (Id. ¶¶ 7-8.)

Based on these facts, the Court finds that the Beale Street Sweep, defined by the Court as "the policy, procedure, custom, or practice by which police officers of the Memphis Police Department order all persons to immediately leave the sidewalks and street on Beale Street without consideration to whether

conditions throughout the Beale Street area pose an existing, imminent or immediate threat to public safety," existed as early as 2007 and continued past June 14, 2012. (See ECF No. 160 at 14.) The Court also finds that the Beale Street Sweep is "so permanent and well settled as to constitute a custom or usage with the force of law." See Monell, 436 U.S. at 691; Claiborne County, 103 F.3d at 507. The Court finds that sufficient evidence exists that the Beale Street Sweep is a continuing practice of the City and that class members continue to be at risk of the deprivation of their constitutional rights.

Plaintiffs have also made a sufficient showing that the Beale Street Sweep "broadly denies individuals in the area access to the public roadways." Cole, 2015 WL 1567824, at *11. The Court finds that because the custom is conducted "without consideration to whether conditions throughout the Beale Street area pose an existing, imminent or immediate threat to public safety," the custom is not "'the least restrictive means to accomplish the City's goal.'" Id. (quoting Johnson, 310 F.3d at 503). Consequently, the Beale Street Sweep is in practice not narrowly tailored to achieve a compelling government interest. See Does v. Munoz, 507 F.3d 961, 964 (6th Cir. 2007). Accordingly, the Court finds that the Beale Street Sweep is an unconstitutional custom that satisfies the requirements for establishing municipal liability under § 1983.

**2.  Moving Force**

Plaintiffs must also show that the municipal policy or custom is the "moving force behind the plaintiff's deprivation of federal rights."  <u>Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown</u>, 520 U.S. 397, 400 (1997) (internal quotation marks omitted).  "Where a plaintiff claims that a particular municipal action itself violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straightforward."  <u>Id.</u> at 404.  "[P]roof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably."  <u>Id.</u> at 405.

In the Summary Judgment Order, the Court found that with regard to due process violations, "[s]hould all factual determinations regarding the constitutionality of the Beale Street Sweep be resolved in favor of Plaintiffs, at a minimum, the individuals cleared from the area at the time of the street suffered a direct violation of their due process right to travel and remain on public roadways as a result of the practice."  <u>Cole</u>, 2015 WL 1567824, at *7.  Similar to the factual issues regarding the existence of an unconstitutional custom, the factual issues regarding causation have been resolved in favor of the Class and Plaintiff Cole.  The jury found that the custom was in fact "the cause of persons being prevented from standing

19

and/or walking on the sidewalk or street of Beale Street," and
had caused "thousands of persons" to be cleared off of Beale
Street "since at least 2007." (Verdict ¶¶ 3, 5.) With regard
to Plaintiff Cole, the jury found that the well-established
practice "prevented Plaintiff Cole from standing and/or walking
on the sidewalk or street of Beale Street on August 26, 2012"
and "was the cause of Plaintiff Cole's unlawful arrest" and
"excessive force being used during the arrest of Plaintiff Cole
in violation of the Fourth Amendment on August 26, 2012." (See
id. ¶¶ 7-8, 11, 14.)

Accordingly, the Court finds that Plaintiffs have
established "a direct causal link between a municipal policy or
custom" — the Beale Street Sweep — and the deprivation of
Fourteenth Amendment rights of the class members and the Fourth
Amendment rights of Plaintiff Cole as described in the jury's
verdict. The Court also finds that Plaintiffs have established
the availability of municipal liability with regard to Plaintiff
Cole and the Class as a whole.

**B.    Declaratory Judgment**

Plaintiffs seek declaratory judgment that "since at least
2007, the City of Memphis violated the constitutional rights of
thousands of persons who were subjected to the Beale Street
Sweep . . . ." (ECF No. 151 at 5.) The Court's analysis
centers chiefly on the Grand Trunk factors.

With regard to the first two Grand Trunk factors, the Court's Order Certifying Class and the Court's Summary Judgment Order are instructive. In the Order Certifying Class, the Court explained that "[a] single declaration that the Beale Street Sweep is unconstitutional and continues in practice today would provide a common answer to the claims of all class members." Cole v. City of Memphis, Tenn., No. 2:13-cv-02117-JPM-dkv, 2014 WL 8508560, at *16 (W.D. Tenn. Sept. 29, 2014) (ECF No. 88 at 36 (citing Dukes, 131 S.Ct. at 2551; Senter, 532 F.2d at 525). Absent certification of a class under Rule 23(b)(2) and issuance of declaratory relief, each individual class member would have to repetitively prove identical claims for the availability of municipal liability and the general constitutionality of the Beale Street Sweep.

In the Summary Judgment Order, the Court discussed the analysis for municipal liability step-by-step, but stopped short of finding municipal liability as a matter of law due to disputed issues of material fact. Cole, 2015 WL 1567824, at *4–9. The Court explained that in order for the City of Memphis to be liable for constitutional violations under § 1983 in the instant case, Plaintiffs must show the existence of a governmental custom such that "practices of local officials are so permanent and well settled as to constitute a custom or usage with the force of law." Id. at *5. Plaintiffs also have the

burden to show that the custom "is the 'moving force behind the plaintiff's deprivation of federal rights.'" Id. at *7 (quoting Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 400 (1997)). Additionally, Plaintiffs must prove that the custom, in this case the Beale Street Sweep, is unconstitutional. See id. at *4-5. Although each class member must still prove his or her own individual damages, issuance of declaratory relief determines the outcome of the preceding elements and settles the controversy of the availability of municipal liability for all class members.

Moreover, without declaratory relief, a significant risk of conflicting judgments regarding the availability of municipal liability would exist. Consequently, judgment declaring the existence of a well-settled custom carried out by the City of Memphis that causes the deprivation of the class members' constitutional rights is essential to "clarifying the legal relations in issue" in the instant case. See Grand Trunk, 746 F.2d at 326. Furthermore, declaratory relief in the instant case is not moot as a result of the jury's findings. Rather, the issue of municipal liability is now resolved in favor of the class members based on the Court's findings supra Part III.A.

For these reasons, the first two Grand Trunk factors support the grant of declaratory relief. The remaining Grand Trunk factors are discussed in detail as follows.

### 1.   The Race for Res Judicata

"The third [Grand Trunk] factor is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum.'" Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 558 (6th Cir. 2008) (quoting AmSouth Bank v. Dale, 386 F.3d 763, 788 (6th Cir. 2004)).  "The question is whether the declaratory plaintiff has filed in an attempt to get her choice of forum by filing first." Id. (internal alteration and quotation marks omitted).  A plaintiff's mere selection of the federal forum is "a choice given by Congress" and, without more, does not indicate procedural fencing.  Id.

In the instant case, the City has not offered any evidence of procedural fencing.  In the typical race for res judicata, the federal or declaratory plaintiffs are defendants or potential defendants in a state action.  See id.  Here, Plaintiffs would have been plaintiffs against the City regardless of the forum.  Plaintiffs' choice to bring suit in federal court pursuant to 28 U.S.C. § 1331 is their statutory right granted by Congress.  Accordingly, the third factor does not weigh against declaratory relief.

### 2.   Encroachment on State Jurisdiction

"Where complex factual issues are present and the action

parallels a state court action arising from the same facts and where alternative remedies are available, declaratory judgment is inappropriate." Am. Home Assur. Co. v. Evans, 791 F.2d 61, 64 (6th Cir. 1986). Considerations of federalism, however,

> are not controlling when no state prosecution is pending and the only question is whether declaratory relief is appropriate. In such case, the congressional scheme that makes the federal courts the primary guardians of constitutional rights, and the express congressional authorization of declaratory relief, afforded because it is a less harsh and abrasive remedy than the injunction, become the factors of primary significance.

Perez v. Ledesma, 401 U.S. 82, 103-04 (1971).

The City has produced no indication of the existence of a state action in the instant case. Rather, the instant cause of action was brought under federal law for violations of the United States Constitution. (ECF No. 1.) The federal courts, as "the primary guardians of constitutional rights," provide an appropriate forum for deciding violations of the Constitution by local governments. See Perez, 401 U.S. at 103-04; see also Kendrick v. Bland, 740 F.2d 432, 437 (6th Cir. 1984). Thus, the concern for increased friction between federal and state courts is minimal. Accordingly, the Court finds that the fourth Grand Trunk factor does not weigh against declaratory relief.

### 3. Alternative Remedy

A district court should "deny declaratory relief if an alternative remedy is better or more effective." Scottsdale

<u>Insurance</u>, 513 F.3d 546, 562 (6th Cir. 2008) (quoting <u>Grand</u>
<u>Trunk</u>, 746 F.2d at 326).

Similar to the fourth <u>Grand Trunk</u> factor, the federal forum
is well-suited to declare the constitutionality of the Beale
Street Sweep and establish the existence of municipal liability.
This is not a case where a state court judgment or indemnity
action would provide a "better or more effective" remedy for the
City's constitutional violations.  See <u>Scottsdale Insurance</u>, 513
F.3d 546, 562 (6th Cir. 2008) (noting declaratory judgment in
state court and filing of an indemnity action as possible
alternative remedies).  Accordingly, the fifth <u>Grand Trunk</u>
factor weighs in favor of declaratory relief.

### 4. Balance of the Factors

Having considered each of the <u>Grand Trunk</u> factors, the
Court finds that they weigh in favor of declaratory relief in
the instant class action.  Accordingly, the Court declares:
Since at least 2007, the City of Memphis violated the
constitutional rights of thousands of persons who were subjected
to "the Beale Street Sweep" as defined in this Order.

### C.  Permanent Injunction

Plaintiffs have established that individual class members
have suffered constitutional violations as a result of the Beale
Street Sweep.  See <u>supra</u> Part III.A.1.  Consequently, the
remaining issue facing the Court with regard to issuance of a

permanent injunction is whether class members "will suffer continuing irreparable injury for which there is no adequate remedy at law." See Saieg, 641 F.3d at 733.

"Courts have [] held that a plaintiff can demonstrate that a denial of an injunction will cause irreparable harm if the claim is based upon a violation of the plaintiff's constitutional rights." Overstreet v. Lexington-Fayette Urban Cnty. Gov't, 305 F.3d 566, 578 (6th Cir. 2002) (citing Connection Distrib. Co. v. Reno, 154 F.3d 281, 288 (6th Cir. 1998); Covino v. Patrissi, 967 F.2d 73, 77 (2d Cir. 1992); McDonell v. Hunter, 746 F.2d 785, 787 (8th Cir.1984)) (finding plaintiff demonstrated irreparable harm because defendant's conduct violated plaintiff's Fourth and Fourteenth Amendment rights).

Plaintiffs argue that a permanent injunction is necessary in the instant case because they were deprived of a fundamental constitutional right. (ECF No. 151 at 13.) Plaintiffs assert that the jury's findings that the Beale Street Sweep was executed "without consideration of whether conditions throughout the Beale Street area pose an existing, imminent, or immediate threat to public safety" is conclusive of the existence of irreparable injuries suffered by Plaintiff Cole and the other class members. (See id. at 13-14.) Plaintiffs further assert that the jury's finding that the Beale Street Sweep has been

ongoing since at least 2007 shows that harm caused by the City's unconstitutional conduct is continuing. (Id. at 14.)

The City argues that "[t]he public interest would be disserved by the issuance of an injunction as sought by the Plaintiff" because "an injunction restricting law enforcement from clearing streets and areas of the City would pose risk to the law abiding public." (ECF No. 150-1 at 9.) In arguing against an injunction, the City poses the questions:

> What existing, eminent [sic] or immediate threat to public safety would law enforcement have to prove before restricting access to or travel upon Beale or any other city street? At what point would law enforcement be able to limit citizens to travel within areas in which there is a fire or barricade situation[?]

(Id.) The City also argues that because "Mr. Cole was adequately compensated for harm to his constitutional rights," there is an adequate remedy at law for class members who have been injured by the Beale Street Sweep. (Id.)

The Court agrees to a large extent with Plaintiffs. The City's arguments ignore the permanent harm caused to Cole's career by the unconstitutional sweep that occurred on August 26, 2012 and Cole's resulting unlawful arrest. Although Cole was awarded monetary damages, he will never have the opportunity to serve in his position of choice due to the arrest record. Similar to Overstreet, Plaintiffs in the instant case have shown the City's conduct violates the class members' Fourteenth

Amendment rights.  See supra Part III.A.  Additionally, the jury found that the Beale Street Sweep caused violations of Plaintiff Cole's Fourth Amendment rights.  (Verdict ¶¶ 11, 14.)

The City's arguments also ignore the possibility of future, recurring harm due to unconstitutional sweeps that may occur absent a permanent injunction.  In the Court's previous Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification, the Court found that "[a]s a general proposition, without injunctive relief, individuals frequenting the Beale Street Entertainment District will continue to be susceptible to injury caused by the potentially unconstitutional actions of MPD police officers."  Cole, 2014 WL 8508560, at *16 (W.D. Tenn. Sept. 29, 2014).  Because the jury has made specific factual findings that 1) the City "carried out a custom and/or well-established practice mainly on weekends at or about 3:00 a.m. of preventing persons from standing and/or walking on the sidewalk or street of Beale Street on or after June 14, 2012"; and 2) the custom was carried out "without consideration to whether conditions throughout the Beale Street area pose an existing, imminent or immediate threat to public safety," the Court finds that a substantial likelihood of recurrence of the unconstitutional practice exists.  Consequently, the Court finds that the City's unconstitutional conduct is continuing.

Moreover, because there is an ongoing risk of the

deprivation of class members' fundamental rights, Plaintiffs have shown that legal remedies by themselves are inadequate to resolve the City's constitutional violations.  For these reasons, the Court finds that without issuance of a permanent injunction, the class members "will suffer continuing irreparable injury for which there is no adequate remedy at law."  See Saieg, 641 F.3d at 733.

To the extent that the balance of equities and public interest are in question, the Court finds that the risk of continuing constitutional violations substantially mitigates any burden suffered by the City in complying with a permanent injunction to end unconstitutional conduct.  Additionally, "it is always in the public interest to prevent the violation of a party's constitutional rights."  G & V Lounge, Inc. v. Michigan Liquor Control Comm'n, 23 F.3d 1071, 1079 (6th Cir. 1994) (citing Gannett Co., Inc. v. DePasquale, 443 U.S. 368, 383 (1979); Planned Parenthood Association v. City of Cincinnati, 822 F.2d 1390, 1400 (6th Cir. 1987)).

Accordingly, Plaintiffs have satisfied their burden to show that a permanent injunction is appropriate in the instant case. The City of Memphis and its agents and employees, are hereby permanently enjoined from engaging in "the Beale Street Sweep" as defined in this Order.  The Court notes that the ordered injunction does not prevent the MPD from conducting normal

police work or clearing Beale Street under appropriate
circumstances where an imminent threat exists to public safety
throughout the Beale Street area.

With regard to the City's question of what specific
circumstances would constitute an existing, imminent, or
immediate threat sufficient to justify a clearing of Beale
Street, the City may look to existing Sixth Circuit case law and
the case law of other Circuits to guide its training and
conduct.

### D. Additional Equitable Relief

Plaintiffs have proposed further equitable relief in
addition to a permanent injunction prohibiting the City from
engaging in the Beale Street Sweep.  "Section 1983 by its terms
confers authority to grant equitable relief as well as damages,
but its words allow a suit in equity only when that is the
proper proceeding for redress, and they refer to existing
standards to determine what is a proper proceeding."  Rizzo v.
Goode, 423 U.S. 362, 378 (1976) (internal quotation marks
omitted).

> Once a right and a violation have been shown, the
> scope of a district court's equitable powers to remedy
> past wrongs is broad, for breadth and flexibility are
> inherent in equitable remedies.
>
> The essence of equity jurisdiction has been the power
> of the Chancellor to do equity and to mould each
> decree to the necessities of the particular case.
> Flexibility rather than rigidity has distinguished it.

<u>Swann v. Charlotte-Mecklenburg Bd. of Ed.</u>, 402 U.S. 1, 15 (1971)

(internal quotation marks omitted).

"It is fundamental that the federal forum, as the ultimate guardian of constitutional rights, possesses the authority to implement whatever remedy is necessary to rectify constitutionally infirm practices, policies or conduct."
<u>Kendrick v. Bland</u>, 740 F.2d 432, 437 (6th Cir. 1984). "Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." <u>Virginian Ry. Co. v. Sys. Fed'n No. 40</u>, 300 U.S. 515, 552 (1937). In § 1983 cases, equitable remedies are "to be determined by the nature and scope of the constitutional violation." <u>See</u> <u>Milliken v. Bradley</u>, 433 U.S. 267, 280 (1977). Consequently, the scope of equitable relief granted by the Court must be "tailored to cure the condition that offends the Constitution." <u>Id.</u> at 282 (internal quotation marks omitted); <u>see also</u> <u>Kendrick</u>, 740 F.2d at 437 ("[T]he federal equity court in fashioning a remedy must afford relief which is no broader than necessary to remedy the constitutional violation." (internal quotation marks omitted)).

The Court has ruled that the City's conduct violates the Fourth and Fourteenth Amendment and that a permanent injunction

prohibiting the Beale Street Sweep is appropriate in this case. See supra Parts III.A-C.  The question that remains is what additional equitable relief, if any, is necessary to "cure" the City's constitutional violations.  See Milliken, 433 U.S. at 282.

In addition to declaratory relief and "a permanent injunction prohibiting the City, and its agents and employees, from engaging in the Beale Street Sweep," Plaintiffs request the following equitable relief:

> 3) Enter a permanent injunction prohibiting the City, and its agents and employees, from placing, or allowing to be placed signage on Beale Street declaring that the street will be cleared at 3:00 a.m.;

> 4) Order the City to remove any and all signage on Beale Street declaring that the street will be cleared at 3:00 a.m.;

> 5) Order the City to distribute an Informational Bulletin ordering officers to cease conducting the Beale Street Sweep;

> 6) Order the City to train its officers that the Beale Street Sweep is unconstitutional and shall not be carried out;

> 7) Order the City to train its officers as to why the Beale Street Sweep is unconstitutional and an unlawful use of police power;

> 8) Order the City to train its officers as to what constitutes an imminent threat to public safety so that the officers may clear the street when necessary in a constitutionally permissible way;

> 9) Order the City to train its officers as to the ordinances and other laws that apply to Beale Street;

10) Appoint a monitor, special master, or other agent of the Court to monitor the training of the officers as ordered by the Court and report to the Court regarding the City's compliance;

11) Appoint a monitor, special master, or other agent of the Court to monitor the arrests on Beale Street by reviewing records of arrests on Beale Street which occurred between the hours of 1:00 a.m. and 6:00 a.m. and determine whether the arrests occur as a result of the Beale Street Sweep and report to the Court regarding the results of the monitoring. The City shall provide the referenced records to the Monitor at 9:00 a.m. on Monday following each weekend;

12) Appoint a monitor, special master, or other agent of the Court to review all arrest records on Beale Street from 2007 to the present to determine which arrests occur as a result of the Beale Street Sweep and report to the Court regarding the results of the review;

13) Schedule regular hearings to allow the court-appointed monitor, special master, or other agent of the Court to appear and testify regarding his or her findings in carrying out the duties assigned by the Court;

14) Any and all additional relief the Court believes is appropriate to end the City's widespread unconstitutional practice.

(ECF No. 151 at 6-7.)

Plaintiffs argue that the preceding equitable relief is necessary in the instant case because Officer Arley Knight testified during trial that his recommendation to end the Beale Street Sweep was not carried out by the MPD. (Id. at 17.) Plaintiffs also point to testimony by multiple police officers that "they and all other officers on Beale Street were

33

instructed by supervisors to enforce the signage on Beale
Street, and/or that the City had enacted an Ordinance closing
Beale Street to the public at 3:00 a.m. and police officers were
required to enforce it." (Id.)

Plaintiffs also argue that appointment of a monitor,
special master, or other agent of the Court is necessary "to
ensure Defendants' full compliance with a judgment of this
Court." (Id. at 20.)  Plaintiffs assert that appointment of a
third party monitor is appropriate in the instant case "[d]ue to
the difficult and complex nature of rooting out an entrenched,
invidious, and department-wide unconstitutional practice []
coupled with the City's history of failure to voluntarily end
the Beale Street Sweep . . . ." (Id. at 19.)  Plaintiffs aver
that "[m]onitoring a defendant's remedial conduct through a
court-appointed monitor, special master or other intermediary is
common in cases requiring broad systemic reform to address
widespread and longstanding unconstitutional policies or
practices." (Id. (citing United States v. Yonkers Bd. Of Educ.,
29 F.3d 40, 44 (2d Cir. 1994)).)

The City argues that the remedies proposed by Plaintiffs go
beyond what is necessary to cure the City's unconstitutional
conduct.  (See ECF No. 152 at 3.)  The City asserts that it has
already removed the signage that indicated a regular police
sweep at approximately 3:00 a.m.  (Id.)  The City further

asserts that the Court is ill-suited to oversee training of the City's police officers. (Id.) The City avers that "[s]uch wide ranging and vague equitable relief seems to be for the purpose of procedural fencing as we proceed through the remedies stage of this litigation." (Id.) Finally, the City argues that any equitable relief granted by the Court should be "the least intrusive remedy that will still be effective." (Id. at 4 (quoting Kendrick, 740 F.2d at 437 (6th Cir. 1984)).)

The Court agrees with Plaintiffs that some equitable relief beyond a permanent injunction prohibiting the City from carrying out the Beale Street Sweep is warranted given the facts of the present case. The condition that offends the Constitution in this case is the City's continued use of the Beale Street Sweep under circumstances where there is no imminent threat to public safety. One of the causes of the condition has been a lack of understanding and training on the part of MPD officers and their superiors. During trial, Plaintiffs produced evidence that the officers in charge of the Beale Street Entertainment District ordered clearings of Beale Street even after the announced discontinuance of the sweep. (See ECF No. 156 at 4-6.) Furthermore, multiple officers assigned to the Beale Street Entertainment District believed that the MPD was enforcing the law as written on various signs throughout the area even though those signs were not posted by the MPD. (See ECF No. 156 at 5-

6.)

Of particular concern to the Court is the City's continued refusal to end the practice. Plaintiffs proffered evidence that the City determined to continue the Beale Street Sweep despite a recommendation from the highest ranking officer in the Entertainment District Unit, Arley Knight, to terminate the practice. The jury found that the Beale Street Sweep continued even after a command staff order officially terminated the practice on June 14, 2012. (See ECF No. 40-1 at 2.)

Also of concern is the City's failure to acknowledge the substantial harm the City's unconstitutional practice has had on the personal lives of the individual class members. Even after the jury found conclusively that the City violated the constitutionally protected rights of Plaintiff Cole, the City appears to persist in its belief that its conduct was justified and the results thereof insignificant:

> Plaintiffs' counsel further speculates that there will be "life-long consequences" to those who left the street at the direction of police officers, although the argument only addresses those "arrested for fabricated charges such as Disorderly Conduct, Criminal Trespass and Obstructing a Highway." Neither plaintiff proved any of the consequences suggested in Plaintiffs' Brief. Only Officer Cole was found to have been harmed by the 'sweep' and he continues his career with the Memphis Police Department.

(ECF No. 152 at 2.) Significantly, during trial, Plaintiff Cole testified that he could no longer serve in his desired

position due to his unlawful arrest.  Contrary to the
City's assertion that "[w]hile the jury determined that
Officer Cole was arrested for disorderly conduct and
resisting arrest without probable cause, there was no proof
of any persons falsely charged pursuant to the sweep," the
jury in fact found that the City's unconstitutional sweep
of the Beale Street Entertainment District caused the
unlawful (or false) arrest of Cole.  (Verdict ¶¶ 7-12.)
The jury also awarded significant damages in compensation
for the City's conduct and resulting injury to Cole.  (Id.
¶¶ 7-17.)  Moreover, the jury found that thousands of
individuals have been unconstitutionally removed from Beale
Street since 2007.  (Id. ¶ 5.)  Based on Cole's testimony
and the jury's findings, it is evident to the Court that,
for the purposes of determining equitable relief, at least
one class member and potentially a substantial number of
class members have suffered long term consequences due to
unlawful arrests as a direct result of the Beale Street
Sweep.

    The City also states, "The City maintains that the
clearing is a tactic utilized after the commanding officers
on the scene make a prudent and reasonable decision based
upon circumstances about which they are aware."  (ECF No.
150-1 at 4.)  The City's assertion is contradicted by the

jury's finding that the clearing of Beale Street "occurs
without consideration to whether conditions throughout the
Beale Street area pose an existing, imminent or immediate
threat to public safety."  (Verdict ¶ 4.)  The City's post-
verdict arguments reinforce the conclusion that the City
has yet to accept and institutionalize the constitutional
balance required by the Fourth and Fourteenth Amendments of
the United States Constitution in policing the Beale Street
Entertainment District.  The City need only adhere to the
constitutional requirements that it already follows in
policing other parts of the City of Memphis.  It is the
institutional resistance to these broadly understood
principles, however, that necessitates limited remedial
steps, which if promptly implemented, should protect the
constitutional rights of individuals throughout the Beale
Street Entertainment District.

        The Court finds that absent additional equitable relief,
there is a reasonable likelihood that the constitutional
violations will not be abated.  Accordingly, the Court finds
that additional training of and dissemination of information
among MPD officers regarding the constitutional rights of
individuals on Beale Street is the appropriate cure to prevent
further violations of the Fourth and Fourteenth Amendments.

        The Court, however, agrees with the City that one of

Plaintiffs' proposed remedies exceeds what is necessary to ensure compliance with the Constitution. Accordingly, the Court declines to adopt the following proposed remedy:

> 12) Appoint a monitor, special master, or other agent of the Court to review all arrest records on Beale Street from 2007 to the present to determine which arrests occur[r]ed as a result of the Beale Street Sweep and report to the Court regarding the results of the review[.]

This remedy would place undue expense on the City and unnecessarily deplete funds better applied to the protection of the public.

## IV. CONCLUSION

For the reasons discussed, the Court ORDERS the following relief in the instant case:

1) The Court DECLARES that, since at least 2007, the City of Memphis violated the constitutional rights of thousands of persons who were subjected to "the Beale Street Sweep," that is, "the policy, procedure, custom, or practice by which police officers of the Memphis Police Department order all persons to immediately leave the sidewalks and street on Beale Street without consideration to whether conditions throughout the Beale Street area pose an existing, imminent or immediate threat to public safety."

2) The City of Memphis and its agents and employees, are PERMANENTLY ENJOINED from engaging in "the Beale Street Sweep" defined as "the policy, procedure, custom, or practice by which police officers of the Memphis Police Department order all persons to immediately leave the sidewalks and street on Beale Street without consideration to whether conditions throughout the Beale Street area pose an existing, imminent or immediate threat to public safety."[2]

3) The City of Memphis and its agents and employees, are PERMANENTLY ENJOINED from placing, or allowing to be placed signage on Beale Street declaring that the street will be cleared at 3:00 a.m.

4) The City of Memphis is ORDERED to remove any and all signage on Beale Street declaring that the street will be cleared at 3:00 a.m.

5) The City of Memphis is ORDERED to distribute an Informational Bulletin to officers explaining that "the Beale Street Sweep," defined as "the policy, procedure,

---

[2] The permanent injunction does not prevent the MPD from clearing Beale Street when there is an imminent threat to public safety throughout the Beale Street area.

custom, or practice by which police officers of the Memphis Police Department order all persons to immediately leave the sidewalks and street on Beale Street without consideration to whether conditions throughout the Beale Street area pose an existing, imminent or immediate threat to public safety," is unconstitutional.

6) The City of Memphis shall train its officers that the Beale Street Sweep defined as "the policy, procedure, custom, or practice by which police officers of the Memphis Police Department order all persons to immediately leave the sidewalks and street on Beale Street without consideration to whether conditions throughout the Beale Street area pose an existing, imminent or immediate threat to public safety," is unconstitutional and shall not be carried out.

7) The City of Memphis shall train its officers as to a) why the Beale Street Sweep is unconstitutional and an unlawful use of police power; b) what constitutes an imminent threat to public safety so that the officers may clear the street when necessary in a constitutionally permissible way; and c) the ordinances and other laws that apply to Beale Street.

8) The Court DETERMINES that appointment of a limited neutral monitor is appropriate in the instant case.  The monitor shall observe and report on the progress of the training of MPD officers, which may be carried out internally by the MPD.  The monitor shall summarize the progress and status of the training of MPD officers in a quarterly report to the Court.  The monitor shall perform this task for a period of one year following his or her appointment.

9) The monitor shall also review the records of arrests for the Beale Street Entertainment District that occur between the hours of 1:00 a.m. and 6:00 a.m. and determine whether those arrests occur as a result of "the Beale Street Sweep" defined as "the policy, procedure, custom, or practice by which police officers of the Memphis Police Department order all persons to immediately leave the sidewalks and street on Beale Street without consideration to whether conditions throughout the Beale Street area pose an existing, imminent or immediate threat to public safety." The City shall provide the referenced records to the monitor by 3:00 p.m. on the Monday following each weekend. The monitor shall include the results and findings in a

quarterly report to the Court.  The monitor shall perform

this task for a period of one year following appointment of

the monitor.


10) The Court will hold quarterly hearings to be attended

by Plaintiffs' counsel, a representative of the City of

Memphis, counsel for the City of Memphis, and the monitor.

The monitor shall provide a written quarterly report to the

Court seven (7) days prior to the quarterly hearing and

orally present his or her findings regarding the City of

Memphis' compliance with the Court's Order.  The hearings

will occur for a period of one year following appointment

of the monitor.


11) It is not contemplated that the position of monitor

will be a full time position.  The City of Memphis shall be

liable, however, for reasonable compensation and expenses

incurred by the monitor upon approval of the Court.  The

monitor shall submit invoices for costs to the Court on the

first day of each month subsequent to the monitor's

appointment.


12) The parties may jointly nominate an individual for the

position of monitor and present that nomination to the

Court in a hearing to be set by future setting letter.
Alternatively, the parties may nominate separate
individuals for the position of monitor.  In the latter
case, the Court may appoint one of the parties' nominees or
another satisfactory individual to the position of monitor.

It is further ORDERED that Plaintiffs file additional
briefing regarding monetary relief, including the jury's award
of damages, pre and post-judgment interest, and attorney's fees
and costs within fourteen (14) days of entry of this order.
Defendant shall have seven (7) days from the filing of
Plaintiffs' brief on monetary relief to file a response brief.

**IT IS SO ORDERED,** this 3rd day of June, 2015.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE